MR. JUSTICE SHEEHY,
concurring in part, and dissenting in part.
I concur (1) the Commissioner has exclusive power to determine the standard prevailing rates of wages under the State’s statutes; (2) that “work of a similar character” refers to projects and not to types of labor; (3) that the Stam “Survey” was inadmissible; and (4) that no attorney’s fees should be awarded. Otherwise, I put as much distance as possible between me and everything else that is said in the majority opinion.
It is easy to expose the sophistry of the majority. One need only ask, “If Yellow Bay Laboratory were a federal project, would Thompkins have had to pay Davis-Bacon wage-rates?” The answer is a resounding “yes”. At the same time as the Yellow Bay project, contractors on the federally-funded Lake County Courthouse and Ronan School project paid Davis-Bacon wages based on the federal determinations. Here the State Commissioner had promulgated standard prevailing wage-rates applicable to Yellow Bay Laboratory. Thompkins did not pay the wage-rates. He clearly violated State law and the terms of his contract with the State. Almost universally it is recognized right, suitable, and expedient that state Little Davis-Bacon acts and the federal Davis-Bacon Act be construed in harmony. See Associated General Contractors v. State of New Hampshire, 113 N.H. 292, 306 A.2d 204 (1973). The purpose of the state *188 act is to safeguard existing minimum wage standards and prevent unfair competition.
It is incredible that a court of this level would state that here the Commissioner had indeed determined standard prevailing wage-rates which existed at the time the Yellow Bay Laboratory contract was entered into, and then to state that the State’s wage figures are not a part of that contract. “There must,” says the majority, “be a meeting of the minds or mutual assent on all of the essential terms.” To assume that this contractor, counseled by an attorney, was so naive as not to know what “standard prevailing wage-rates” meant is itself naivete of the farthest reach.
The issue should not be so simply dismissed on the mere grounds there was no mutual consent to the standard prevailing wage-rates. The provisions of subsisting statutes in force and applicable to contract are incorporated in the contract much as those specifically set forth therein. Valier Company v. State, 123 Mont. 329, 215 P.2d 966 (1950). Therefore, Thompkins contracted if he paid less than the standard prevailing wages “as established under the public works contract”, he forfeited Twenty-five (25) Dollars per day for each underpaid worker. Section 18-2-407, MCA. He contracted that the Commissioner of Labor may set the standard prevailing wage-rates. Section 18-2-402, MCA. Since Thompkins was not a signator to any collective bargaining agreement, he contracted to pay “negotiated fringe benefits” to his employees as wages by undertaking a state public-works contract. Section 18-2-405, MCA. These statutory provisions were part and parcel of this contract with the State whether specifically stated in his contract or not. It is not an excuse that the standard prevailing wage-rate “existed in the bureaucracy” as the majority states. It was Thompkins’ statutory and contractual duty to comply with the findings of the lawfully established bureaucracy acting under statutory directives.
The inconvenient existence of these statutes and decisional contract law proved no deterrent to the District *189 Court, and is now no bar to the majority. One of the prime objects of the State’s Little Davis-Bacon Act is to prevent contractors from taking advantage of the excess labor pool in a depressed locality. Pitting worker against worker in competition for the few jobs available by forcing them to bargain individually for the wages on public contracts is not good business or good policy for the State or any of its subdivisions. Prevention of cutthroat worker competition in the struggle to survive is something the courts ought to protect in the noblest performance of their duty. The majority fails its duty here. I dissociate myself from this result entirely. The District Court judge, by assessing attorney’s fees against the Commissioner where no statutory or equitable basis existed for attorney’s fees, seemed determined to punish the State. This court, by side-stepping contract law, punishes the workers and awards the contractor a fatter profit from their rightful due.
Finally, this court errs, as did the District Court judge, when it holds that building the Yellow Bay Laboratory was the same as building a house. Rare indeed is the house (it would be a castle) where the mechanical sub-contract, that portion of the project bid and won by Thompkins, amounts to Two Hundred Thirty-five Thousand (235,000) Dollars out of a Half-Million Dollar project. (The plumbing contract was One Hundred Twenty Thousand (120,000) Dollars; the electrical about Eighty Thousand (80,000 Dollars.) Edgar Guest said, “It takes a heap o’ livin’ to make a house a home.” It takes more than livin’, it takes a heap o’ plumbin’ and a heap o’ heatin’ and coolin’ to make a house a lab. (See Odgen Nash: “Come Clean, Mr. Guest”.) But it does not take a Class A Contractor’s License to build a house, and that is what State law required for a project the size of Yellow Bay Laboratory, Section 15-50-204, MCA. This court and the District Court should have confined the search for prevailing wage-rates to the wages paid in the locality by the class of contractors eligible to build the project, that is, Class A Contractors.
MR. JUSTICES SHEA and MORRISON concur.